UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST BROWNING,

    Plaintiff,

vs.

KYM WORTHY,

    Defendant.

_____/

Civil Action No.
13-CV-10257
Honorable Patrick J. Duggan

## OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, SUSTAINING IN PART DEFENDANT'S OBJECTION, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### I.  INTRODUCTION

Plaintiff Ernest Browning, proceeding pro se, filed this lawsuit under 42 U.S.C. § 1983 against Defendant Kym Worthy, the Wayne County Prosecutor, challenging the constitutionality of a Michigan statute addressing postconviction DNA testing.  *See* Mich. Comp. Laws § 770.16.  The matter was referred to the Magistrate Judge for all pretrial proceedings.  On April 18, 2014, Magistrate Judge Charles E. Binder issued a Report and Recommendation (R&R), recommending that Defendant's motion to dismiss, which was filed on September 27, 2013, be denied.[1]

---

[1] The case was originally assigned to Magistrate Judge Laurie J. Michelson and later reassigned to Magistrate Judge Charles E. Binder, the judicial officer who issued the R&R presently under review.  After Magistrate Judge Binder issued his R&R, the case was reassigned again, this time

Defendant filed objections to the R&R, urging the Court to reject the R&R and grant the motion. The Court reviews *de novo* those portions of the R&R to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Having done so, and for the reasons that follow, the Court grants in part and denies in part Defendant's motion to dismiss.

## II. BACKGROUND[2]

In 1977, Plaintiff was convicted of first-degree felony murder and first-degree criminal sexual conduct following a jury trial in state court.[3] Specifically, Plaintiff

---

to Magistrate Judge Patricia T. Morris.

[2] The background is gleaned from the following sources: the complaint; Michigan statutes, and *People v. Browning*, No. 74-05901 (Wayne Cnty. Cir. Ct. Jul. 5, 2011). Authority to consider the latter two sources in adjudicating Defendant's motion to dismiss stems from the following rules of law. First, courts may consider, in adjudicating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), documents to which the plaintiff refers in his or her complaint that are central to the claims asserted in the case. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Second, "the Court may consider . . . state statutes" in adjudicating a motion for failure to state a claim under Rule 12(b)(6). *Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 988 (N.D. Ohio 1984). Third, "[f]ederal courts may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82 (6th Cir. 1969). The factual allegations in the complaint are taken as true for purposes of this motion. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451-452 (6th Cir. 2003).

[3] The first degree murder statute under which Plaintiff was convicted, Mich. Comp. Laws § 750.316, encompasses both traditional premeditated murder and felony murder. Plaintiff insists that he was convicted under the felony murder clause of the statute, *id.* § 750.316(1)(b), while Defendant asserts that Plaintiff was convicted under the traditional premeditated murder clause of the statute, *id.* § 750.316(1)(a). At the present time, the record does not adequately reflect the provision of the statute under which Plaintiff was convicted. Defendant points out, correctly, that Plaintiff's Michigan Department of Corrections (MDOC) record indicates that he was convicted of first degree murder. However, under § 750.316, both types of murder are considered first degree murder, as evidenced by the fact that the statute encompassing both types of murder is titled "First

was convicted of raping LaDonna Simmons in the course of a robbery committed by Plaintiff and others, during which someone was murdered. Plaintiff is currently serving a life sentence for the murder conviction; his sentence of 25-40 years for the rape conviction has been discharged.

A doctor collected a vaginal swab from Ms. Simmons following the robbery, but the prosecution did not introduce it at Plaintiff's trial. Instead, Plaintiff was convicted based on the identification testimony of Ms. Simmons, fingerprint evidence, and the testimony of a co-defendant. Because DNA testing was unavailable at the time of Plaintiff's conviction, the vaginal swab was not tested for DNA.

After his conviction, Plaintiff twice petitioned the state court for postconviction relief under Mich. Comp. Laws § 770.16 – Michigan's postconviction DNA testing statute. Under § 770.16, if certain conditions outlined in the statute are satisfied, a defendant convicted at trial of a felony may petition the state court in which he or she was sentenced for an order requiring DNA testing of biological material identified during the investigation, along with a new trial if

---

degree murder." Thus, the MDOC record does not clarify whether Plaintiff was convicted of traditional premeditated murder or felony murder. For purposes of the present motion, and given the current evidentiary void, the Court accepts the allegations in Plaintiff's complaint as true and assumes that he was convicted under the felony murder provision of § 750.316(1).

appropriate in light of the results of that testing.[4]  Both petitions were denied, but the present record contains the judicial opinion disposing of only the later of the two petitions.  In that opinion, issued on July 5, 2011, Wayne County Circuit Judge Daniel P. Ryan denied Plaintiff's petition for relief under § 770.16, construing the statutory language to foreclose the possibility of postconviction DNA testing in a situation – like that of Plaintiff's – in which the biological material was not

---

[4] Section § 770.16 provides, in pertinent part:

> (3) A petition under this section shall allege that biological material was collected and identified during the investigation of the defendant's case.  If the defendant, after diligent investigation, is unable to discover the location of the identified biological material or to determine whether the biological material is no longer available, the defendant may petition the court for a hearing to determine whether the identified biological material is available.  If the court determines that identified biological material was collected during the investigation, the court shall order appropriate police agencies, hospitals, or the medical examiner to search for the material and to report the results of the search to the court.
>
> (4) The court shall order DNA testing if the defendant does all of the following:
>
>> (a) Presents prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of, or accomplice to, the crime that resulted in the conviction.
>>
>> (b) Establishes all of the following by clear and convincing evidence:
>>
>>> (i) A sample of identified biological material described in subsection (1) is available for DNA testing.
>>>
>>> (ii) The identified biological material described in subsection (1) was not previously subjected to DNA testing or, if previously tested, will be subject to DNA testing technology that was not available when the defendant was convicted.
>>>
>>> (iii) The identity of the defendant as the perpetrator of the crime was at issue during his or her trial.

introduced to identify the defendant at trial. *See People v. Browning*, No. 74-05901 (Wayne Cnty. Cir. Ct. Jul. 5, 2011). In other words, the statute was interpreted to allow for the possibility of DNA testing only where the biological material was introduced at trial and led to the defendant's conviction, and not in cases where the biological material was not introduced at trial but could potentially be used during postconviction proceedings to undermine the trial evidence and exonerate the defendant.

Plaintiff filed the present lawsuit on January 18, 2013, challenging the constitutionality of § 770.16. Plaintiff argues that the statute, as construed by Michigan courts, violates his Fourteenth Amendment due process rights because it arbitrarily limits relief to cases in which the biological material was introduced at trial, undermining the statute's goal:

> MCL 770.16, on its face, as authoritatively construed by the courts of Michigan, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that it establishes a liberty interest in the discovery and testing of DNA evidence that could prove a defendant's innocence but its procedures are "fundamentally inadequate to vindicate th[at] substantive right provided" . . . because those procedures arbitrarily and unreasonably restrict the discovery and testing of DNA evidence to those cases where (a) DNA testing was not available at the time of trial and (b) the prosecutor nevertheless used the biological evidence to identify the defendant as the perpetrator of the crime and (c) the biological evidence actually led to the defendant's conviction for that crime.

Compl. ¶ 27 (Dkt. 1, Page ID 5) (case citation omitted). Plaintiff seeks the

following relief:

1. Issue a declaratory judgment that MCL 770.16's restriction of DNA testing to only biological evidence that was used against a criminal defendant at trial and that led to his conviction violates the Fourteenth Amendment to the United States Constitution;

2. Issue an injunction ordering Defendant or her agents to produce, obtain, search for, and otherwise acquire and cause to be tested for a comparison to Plaintiff's DNA, the biological evidence collected from LaDonna Simmons after the incident leading to the conviction for which Plaintiff is currently serving life in prison without parole, and to provide the results of such search and testing to Plaintiff;

3. Grant Plaintiff his costs of this action, and;

4. Grant such other relief to which Plaintiff may be entitled.

*Id.* at 7 (Page ID 7). Plaintiff states in his complaint that he "is not challenging any ruling of any state court" but rather "is challenging the constitutionality of the state statute on its face, as authoritatively construed by the state courts." *Id.* ¶ 28 (Page ID 5). Moreover, Plaintiff does not specify in his complaint whether he is pursuing a substantive due process claim, a procedural due process claim, or both. However, in his brief opposing Defendant's motion to dismiss, Plaintiff clarifies that he is pursuing a procedural due process claim only. *See* Pl. Resp. at 10 (Dkt. 16, Page ID 92) ("Plaintiff is only raising a procedural due process claim.").

The sole Defendant in this case is Kym Worthy, the Wayne County Prosecutor. On September 27, 2013, Defendant filed a motion to dismiss asserting

three arguments.  First, Defendant argues that the Court lacks subject matter jurisdiction over the case under the Rooker-Feldman doctrine.  Second, Defendant argues that she is not the proper defendant in this case with regard to Plaintiff's request for an injunction because she has no authority to provide Plaintiff with the relief he seeks from her.  Third, Defendant argues that Plaintiff does not have a substantive due process right to DNA testing and that his procedural due process claim is not viable.

Magistrate Judge Binder issued an R&R on April 18, 2014 rejecting all of Defendant's arguments, except that the Magistrate Judge did not address the viability of Plaintiff's procedural due process claim.  Thus, the Magistrate Judge recommended that the substantive due process claim proceed – even though Plaintiff clarified in his response brief that he is not pursuing that claim – and did not address the viability of the claim that Plaintiff *is* pursuing – the procedural due process claim.

Defendant filed an objection to the R&R, taking issue with the Magistrate Judge's ruling that Defendant was properly named as a defendant in this matter with regard to Plaintiff's request for an injunction.  Defendant does not object to the Magistrate Judge's other two rulings – the recommendation that the case is not barred by the Rooker-Feldman doctrine and the recommendation that Plaintiff's

substantive due process claim should proceed. Plaintiff has not filed a response to Defendant's objection and the time to do so has expired.

### III. ANALYSIS

The Court agrees with the Magistrate Judge's ruling that the case is not barred by the Rooker-Feldman doctrine for the reasons stated in the R&R. The Court disagrees with the Magistrate Judge's recommendation to allow a substantive due process claim to proceed in light of Plaintiff's express declaration that he is not pursuing that claim. Therefore, the substantive due process claim will be dismissed.

As mentioned, although the parties discussed the viability of Plaintiff's procedural due process claim in their briefs, the Magistrate Judge did not address or even acknowledge the claim in his R&R. And somewhat perplexingly, neither party has objected to the Magistrate Judge's failure to address the claim.

Before resolving the parties' arguments concerning the viability of Plaintiff's procedural due process claim, the Court addresses whether Defendant was properly named as a defendant in this matter. As noted, Plaintiff seeks two forms of relief: (1) a judgment declaring § 770.16 unconstitutional as violative of the procedural due process clause of the Fourteenth Amendment to the United States Constitution, and (2) in Plaintiff's words, "an injunction ordering Defendant or her agents to produce,

obtain, search for, and otherwise acquire and cause to be tested for a comparison to Plaintiff's DNA, the biological evidence collected from LaDonna Simmons . . . and to provide the results of such search and testing to Plaintiff." This Court cannot grant the second form of relief – the injunction – for two reasons. First, according to the unambiguous language of the statute, this Court has no authority to order Defendant or anyone else to produce and test the vaginal swab; that authority is vested exclusively with the court in which Plaintiff was sentenced. *See* Mich. Comp. Laws § 770.16(2) ("The petition shall be filed in the circuit court for the county in which the defendant was sentenced and shall be assigned to the sentencing judge or his or her successor."). Because Plaintiff is asking this Court to do what the statute says only the state court in which he was sentenced can do, the Court must dismiss Plaintiff's request for an injunction for lack of jurisdiction.

Second, even if this Court did have authority to grant the injunction, Defendant is the wrong party at which to direct the injunction. The statute provides, in pertinent part:

> A petition under this section shall allege that biological material was collected and identified during the investigation of the defendant's case. If the defendant, after diligent investigation, is unable to discover the location of the identified biological material or to determine whether the biological material is no longer available, the defendant may petition the court for a hearing to determine whether the identified biological material is available. If the court determines that identified biological material was collected during the investigation,

> the court shall order appropriate police agencies, hospitals, or the medical examiner to search for the material and to report the results of the search to the court.

Mich. Comp. Laws § 770.16(3). Pursuant to this framework, if a court determines that the vaginal swab was taken – and the Court, in accepting as true the facts stated in the complaint, assumes that a vaginal swab of Ms. Simmons was taken – it has the authority to order "appropriate police agencies, hospitals, or the medical examiner to search for the material." Defendant, as the county prosecutor, is not a police agency, hospital, or the medical examiner. Accordingly, the Court would not have the authority to order her to perform the requested task of locating and testing the vaginal swab. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 512 (6th Cir. 1996) ("[A] plaintiff must show that an individual defendant failed to act under color of law. If state law does not impose a duty to take action, 'there is no conduit through which an exercise of state power can be said to have caused the constitutional injury.'" (citation omitted) (quoting *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1416 (5th Cir. 1995)).

The Magistrate Judge reached a contrary result; however, his discussion of the issue, which comprises one sentence of the R&R, is overly simplistic. The Magistrate Judge concluded that Defendant was a proper defendant in this case because the prosecutor was deemed a proper defendant in another case involving a

claim for relief that is similar to the claim for relief in this case. *See Skinner v. Switzer*, 131 S. Ct. 1289 (2011). However, as Defendant correctly points out, the Texas postconviction DNA statute at issue in *Skinner* is materially different from Michigan's postconviction DNA statute. The statute in *Skinner* imposes a duty on "the attorney representing the state" to "deliver the [biological] evidence to the court, along with a description of the condition of the evidence; or . . . explain in writing to the court why the state cannot deliver the evidence to the court." Tex. Code Crim. Proc. Ann., Art. 64.02(2). Thus, naming the prosecutor as the defendant in *Skinner* was appropriate, as the Texas statute imposes an affirmative duty to act on the prosecutor. Because the same is not true of the Michigan statute, the Magistrate Judge's conclusion that *Skinner* controls is erroneous.

For these reasons, the Court dismisses Plaintiff's request for an injunction requiring Defendant to "produce, obtain, search for, and otherwise acquire and cause to be tested for a comparison to Plaintiff's DNA, the biological evidence collected from LaDonna Simmons . . . and to provide the results of such search and testing to Plaintiff." The Court lacks jurisdiction to entertain that request and, in any event, Defendant is not the appropriate party at which to direct the request.

Defendant does not argue that she was improperly named as a defendant with regard to Plaintiff's other claim for relief, namely, the request that the Court declare

§ 770.16 unconstitutional. "In order to challenge the constitutionality of a rule of law, a plaintiff must bring forth an action against the state official (or agency) responsible for enforcing the rule." *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276 (N.D. Fla. 2000). *See also Ex parte Young*, 209 U.S. 123, 157, 28 S. Ct. 441, 453 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."); *Putnam v. Davies*, 169 F.R.D. 89, 98 (S.D. Ohio 1998) ("It is well-settled that when a plaintiff seeks to challenge the constitutionality of a state statute, the proper defendant for that suit is the state official or agency that enforced the allegedly unconstitutional statute against the plaintiff."). The present briefing contains no discussion on the question of who is ultimately charged with enforcing § 770.16. Thus, at this juncture, the Court declines to dismiss Plaintiff's first claim for relief seeking a declaration that § 770.16 violates his procedural due process rights on the ground that Plaintiff named the wrong defendant.

The Court now addresses Defendant's argument that Plaintiff's procedural due process claim is unmeritorious. Defendant argues that the claim is foreclosed by *District Attorney's Office v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308 (2009) and *In*

*re Smith*, 349 F. App'x 12 (6th Cir. 2009). In *Osborne*, the Supreme Court held that a convicted prisoner does not have a substantive due process right to access and test DNA evidence, and that a procedural due process claim will only lie where a state's postconviction DNA procedures "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." 557 U.S. at 69, 129 S. Ct. at 2320 (internal quotations omitted). Phrased differently, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* Analyzing Alaska's postconviction DNA procedures, the Court held that they were adequate under this framework. *Id.* at 69-70, 129 S. Ct. at 2320-21. Importantly, however, the Alaska framework considered in *Osborne* did not contain the limitation that Plaintiff challenges here, namely, the requirement that the biological material was introduced at trial. Therefore, *Osborne* does not necessarily foreclose the present procedural due process challenge.

Nor does the Sixth Circuit's unpublished decision in *Smith*. There, the Sixth Circuit held, without discussion, that "Michigan's statutory [postconviction DNA access and testing] scheme is more comprehensive than the state procedures sanctioned by the *Osborne* court." 349 F. App'x at 15. However, Plaintiff does

13

not challenge the statute on its face; rather, Plaintiff challenges a specific manner in which Michigan courts have interpreted the statute (*i.e.*, to require the introduction of the biological material at trial). There is no suggestion in *Smith* that the panel was aware of the challenged manner in which Michigan courts have interpreted the statute. Thus, under the circumstances, the quoted holding of *Smith* does not preclude Plaintiff from arguing that the challenged limitation on his right to access and DNA-test the vaginal swab offends his procedural due process rights.[5]

The Court recognizes the Supreme Court's comment in a post-*Osborne* decision that *Osborne* "left slim room for the prisoner to show that the governing state law [on postconviction DNA testing] denies him procedural due process." *Skinner*, 131 S. Ct. at 1293. However, slim room is not no room, and the Court is not convinced based on the arguments presently asserted by Defendant that Plaintiff's procedural due process claim is unmeritorious.

### IV. CONCLUSION

For the reasons stated above, (1) the Magistrate Judge's R&R is **ADOPTED IN PART** and **REJECTED IN PART**, (2) Defendant's objection to the R&R is **SUSTAINED IN PART**, (3) Plaintiff's substantive due process claim, to the extent

---

[5] Defendant asserts an additional argument in support of her position that Plaintiff's procedural due process claim must fail. However, that argument depends on the conclusion that Plaintiff was convicted of traditional premeditated murder and not felony murder. For the reasons stated in footnote three, the Court cannot accept that conclusion at this time.

he asserted the claim in his complaint, if at all, is **DISMISSED**, and (4) Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows: **DENIED** as to Plaintiff's request for a declaration that Mich. Comp. Laws § 770.16 is unconstitutional; **GRANTED** as to Plaintiff's request for an order requiring Defendant to find and test the vaginal swab.  This case shall proceed only on Plaintiff's claim that § 770.16 violates the procedural due process clause of the Fourteenth Amendment.  Should the parties wish to file any further motions relating to this claim, they must do so by September 2, 2014.

**SO ORDERED.**

Dated: August 18, 2014                s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE


Copies to:

Ernest Browning
Aaron C. Thomas, Esq.